## STEIMMIG et al. v. DAVIDSON et al.

District Court, S. D. New York.
April 28, 1931.

Hauff & Warland, of New York City (W. E. Warland, C. W. Mortimer, and P. J. Whelan, all of New York City, of counsel), for plaintiffs.

Cooper, Kerr & Dunham, of New York City (Drury W. Cooper and C. B. Townsend, both of New York City, of counsel), for defendants.

FRANK J. COLEMAN, District Judge.

The controversy involves only the question of priority as between the application of plaintiff Steimmig and of defendant Davidson for a patent covering a composition of matter consisting of a cellulose derivative in solution. The plaintiff's application was filed in the United States on April 22, 1926, and the defendant's one month later, on May 19, 1926. Furthermore, the plaintiff had previously filed in Germany on April 24, 1925, which must be taken as his effective date. The defendant, however, had on December 18, 1924, filed an application in the United States for a patent on cognate solutions, but did not claim the one now in suit, though he specifically mentioned it. He is, accordingly, entitled to the 1924 date which is prior to either of the plaintiff's, if he adequately disclosed in his earlier application the solution which is now in controversy. The principal question presented is whether that disclosure was sufficient to give the defendant's present application the advantage of the 1924 date.

After the present applications had been filed and had been put in interference in the Patent Office, the defendant moved to shift the burden of proof, because of his 1924 application, which was still pending, and the Patent Office granted the motion. Since the plaintiff made no attempt to carry back of that date, his application for a patent was denied, and ultimately a patent was issued to defendant on his present application and denied on his earlier one. This suit is brought to review the action of the Patent Office in allowing the defendant the 1924 date, and therefore denying the plaintiff's application. The controversy was thoroughly considered by the Patent Office, and at no stage were any dissenting views expressed. The Interference Examiner was affirmed by the Board of Appeals, who considered the question twice, on the original appeal and on a motion for a reargument, and finally the Commissioner refused an exercise of his supervisory power. Certainly the decision should not be set aside without clear proof of error.

The substance sought to be patented has its only use as a base for lacquers, and it would be helpful in considering the question presented to bear in mind the principal steps in the manufacture of lacquers. A cellulose derivative, such as nitrocellulose, is the principal material that remains as a hard coating on the lacquered object after the drying process, and, since it is in itself a solid, the first step in the manufacture of the lacquer is dissolving the nitrocellulose in some solvent which will evaporate quickly, leaving the nitrocellulose adhering to the surface. This solution for purposes of economy is diluted

with a much larger quantity of some cheaper quicker-drying liquid such as benzene, and pigments are added to give the desired color. The base of the lacquer is the original solution containing the nitrocellulose, and does not include the diluent and the pigments, which are added later.

The base which is claimed by both parties in their present applications is a solution of some cellulose derivative such as nitrocellulose in the solvent acetate of monoethyl ether of ethylene glycol ($c_2 h_5 o$-$c_2 h_4 ooch_3$). For convenience this solvent will herein be designated as ethyl ether. It was not specifically claimed by defendant in its 1924 application, but there was a generic claim for a solution of nitrocellulose in a solvent compound "represented by the formula $R.O.R'OOCCH_3$, where R stands for an alkyl or aryl group or hydrogen, and R' stands for an alkylene group containing a plurality of carbon atoms," and it is undisputed that the ethyl ether came within that generic claim. In addition to the generic claim, defendant specifically claimed a solution of nitrocellulose in the solvent ethylene glycol monoacetate which also fell within the generic claim. This solvent for convenience will be designated as monoacetate.

Though the defendant did not in the 1924 application specifically claim the solvent ethyl ether, he did state in the specification:

"My invention also includes compositions containing instead of a glycol monoacetate a compound obtainable by the substitution of an alkyl or aryl group for the hydroxyl hydrogen of a glycol monoacetate. An example of such a compound is the acetate of the monoethyl ether of ethylene glycol $C_2 H_5 .O$-$C_2 H_4 .OOCCH_3$. Compounds of this class contain an ether linkage and like most of the ethers they are good solvents.

"As a specific example of a composition according to my invention, the following is given; Ten ounces of nitrocellulose is dissolved in one gallon of ethylene glycol monoacetate, and the solution is diluted with three gallons more or less of benzene, according to the viscosity desired."

Without considering the adequacy of the disclosure, it is apparent that the defendant in the 1924 application plainly had in mind the two solvents, ethyl ether and monoacetate, that he specifically claimed the latter and generically claimed both. Under the rule then prevailing, he could not have claimed both solvents specifically in the one application, so, while the original was pending, he filed the application in suit for the ethyl ether solvent, expressly stating that it had been disclosed in the prior application.

As to the adequacy of the disclosure in the 1924 application, the specification must be construed to have intended that the specific example given include either the monoacetate or the ethyl ether. Though the specific example mentions only the monoacetate, the preceding paragraph has the statement that the ethyl ether may be used "instead" of the monoacetate. In accordance with the specific example, ten ounces of nitrocellulose would therefore be dissolved in a gallon of ethyl ether, which would, I believe, result in a useful composition of matter. This would not be a saturated solution, but it would be useful as a base for some kind of lacquer. It may well be that other proportions would result in a more useful solution, but that is immaterial. I believe that all the solutions containing a substantial amount of nitrocellulose even up to the point of saturation would have utility in the manufacture of lacquers and that the proportions should depend upon the particular purpose for which the lacquer was intended.

The plaintiff's principal contention is that the specific example results in a useless mixture because an improper amount of diluent is specified. In the first place, it should be borne in mind that the diluent is no part of the composition of matter sought to be patented; but, aside from that, I am convinced from the evidence at the trial that the amount of diluent specified does not render the mixture useless. The specific example calls for a diluent of "three gallons more or less of benzene," and from the testimony of plaintiff's own experts the "more or less" should be construed to mean between 2.7 gallons and 3.3 gallons. In tests made by the plaintiff's experts, the addition of the diluent in proportion to 2.79 gallons in the specific example resulted in a useful mixture suited to the manufacture of lacquer; but, when more diluent was added, the nitrocellulose was to some extent precipitated out of its solution, so that, when the amount of diluent corresponded to three gallons in the specific example, a considerable part of the nitrocellulose had been precipitated and rendered useless for the lacquer.

Assuming that the final product of the plaintiff's tests where the diluent was added in proportion to 3 gallons in the example given was entirely useless for any purpose, I still believe the specific example was not rendered invalid. In the first place, it expressly

states that the diluent is to be "more or less," and it is undisputed that any one skilled in the art would know enough to discontinue adding the diluent once the precipitation of the nitrocellulose had commenced. Furthermore, the ingredients used by the plaintiff's experts were not such as would be used industrially. The ethyl ether was chemically pure, and as such had considerably less tolerance for the nitrocellulose than the commercial ethyl ether would have had. If a lacquer manufacturer had been following the specific example, he would have used the ordinary commercial ethyl ether and could have added diluent almost, if not entirely, up to the proportion of three gallons in the specific example. Under all the circumstances, I have no doubt but that any man skilled in the art could from the disclosure and by following the specific example prepare a useful lacquer base and add a proper amount of diluent.

In the plaintiff's brief, it is expressly stated that the only question before the court is as to the sufficiency of the prior disclosure, but at other points other contentions are raised. I do not deem it necessary to consider in detail these various contentions, except to say that, as to the validity of the claims in defendant's later application, I do not believe the plaintiff should be permitted to question it now, since he made no motion to dissolve the interference; but, even if he were, the claims should be held valid because solutions in almost all proportions would have utility, and any one skilled in the art could readily determine what proportions would best suit his purpose.

Decree for defendants.